## SCOTT *vs.* SHINER.

1. Two agreements made with different parties, giving them the refusal of the purchase of certain lands, held together to constitute a binding obligation on the defendant to convey to the complainant the lands in question in fee simple, for the price therein specified, if the offer were duly accepted within the time limited. The offer held to have been accepted by the complainant's making tender, and offering a deed for execution within the limited time.

2. To constitute a misrepresentation which will prevent a decree for specific performance, the statement in question must be so material to the contract built on it, that, if the statement be false, the contract becomes one which it would be unconscionable for the party who has made the statement to enforce. The misrepresentation must be shown to have operated to the prejudice of the defendant.

Bill for specific performance. On final hearing on pleadings and proofs.

*Mr. C. Ewan Merritt*, for complainant.

*Mr. C. T. Reed*, for defendant.

THE CHANCELLOR.

The bill is filed to enforce specific performance of an agreement in writing, made and signed by the defendant, and delivered to the complainant on the 14th of March, 1874, giving to the latter the refusal of the purchase of the defendant's land adjacent to the National Cemetery at Beverly, in this state, until the 1st of July then next, at the price of $3250.

This agreement was the extension of another written agreement made previously, on the 3d of January in the same year, and signed by the defendant, in favor of Wesley Markwood, by which the refusal of the purchase of the property was given to the latter at the same price, until the 1st of April, 1874. The agreement of the 14th of March was made with the complainant, with Markwood's consent. In March, 1874, after the making of the last-mentioned agreement, the complainant wrote to the defendant from Washington, D. C., stating that he would be prepared to take the property according to the agreement, and at or about the same time he wrote to Markwood to the same effect, requesting him to communicate the contents of the letter to the defendant. Markwood received this letter. The defendant denies that he received the one addressed to him.

Two days after the making of the agreement with the complainant, the defendant sent to him, at his request, a diagram, with a description in writing of the property referred to in the agreement. In June, 1874, the complainant called on the defendant, and informed him that he had come to obtain the particulars for the deed to be executed to him for the property, with a view to taking the property in pursuance of the agreement. The defendant thereupon told him that he had sold the property to other persons, but did not mention their names. On the 30th of June, 1874, the complainant, with his lawyer, called on the defendant, and, saying that he had come to take the property, tendered him $3250, the purchase money, and a deed to be executed by the defendant and his wife to the complainant, conveying the premises to the latter in fee simple, and requested him to take the money and sign

the deed. The defendant refused to do either. He denies having seen any deed on that occasion, but his workman, who was present, and who was sworn in his behalf, testifies that he saw a paper in the hands of the lawyer, and heard the complainant say he had come to get the defendant to sign that deed.

On the 3d of July, 1874, the complainant filed his bill in this cause. The defendant, by his answer, denies the validity of the instruments of writing above mentioned, given to Markwood and the complainant respectively, and that any obligation to convey the property arose from them, and that the complainant gave him notice of his acceptance. of the offer contained in the paper of March 14th. He denies the tender, also, and alleges that the instrument last mentioned, the instrument of March 14th, was made by him through misrepresentation on the part of the complainant; the alleged misrepresentation consisting in the statement which he says was made by the complainant to him at the time of signing that paper, that the complainant was the authorized agent of the United States government to purchase the land in question for cemetery purposes, which he says he subsequently ascertained to be entirely false.

The instruments of writing by which the refusal to purchase the land was given first to Markwood and then to the complainant, together constituted a binding obligation on the defendant to sell and convey the property in question, in fee simple, to the complainant, for the price therein specified, if the offer were duly accepted within the time therein limited. *Hawralty* v. *Warren*, 3 *C. E. Green* 124; *Haughwout* v. *Boisaubin*, *Id.* 315; *Potts* v. *Whitehead*, 5 *C. E. Green* 55. And that offer was so accepted on the 30th day of June, 1874, when the tender and request for a deed were made. That the deed contained covenants which the defendant could not have been compelled to give, is of no consequence ; his refusal was not based on objection to the contents of the deed. He simply refused to convey. He had, in the former interview with the complainant in June, alleged, as the complainant says in one

part of his testimony, that he had sold the land to other persons. The complainant says, in another part of his testimony, that on that occasion the defendant told him that since he had made the agreement with the complainant, he had made a conditional agreement with some other parties, and desired the complainant to see them. He further says, testifying generally, that before the tender of the money and the deed, the defendant declined to carry out the agreement. From the testimony in the cause, it appears to be very probable that the defendant had not, in fact, made any sale of the premises when he refused to carry out the agreement with the complainant. He told the latter that the agreement he had made with other parties was conditional, and requested him to see them on the subject. It was probably conditional upon his being able to escape from liability to the complainant. He admits in his testimony that he had not, in fact, sold the property at that time. His language is, "I told him I had sold it; I *considered* I had sold it to the United States government for cemetery purposes, as I had intended by the agreement with Mr. Markwood; I subsequently understood that Mr. Scott had nothing to do with the United States government, as he had represented himself to have; I then carried out my agreement as I first understood it, and sold to the United States government." The evidence shows that if the sale was made as he stated, no conveyance has been made, and that the sale was for only part of the property at the price of $2850, and that that sale awaits the event of this suit. Indeed, the practical question involved in this action is said to be who shall sell the property to the United States government—the committee appointed by the town of Beverly to negotiate the sale of this property to the government, or the complainant?

That committee are the persons with whom the conditional agreement referred to by the defendant in his conversation with the complainant in June previously to the tender, was made. The evidence is, that as late as December, 1874, the defendant had not sold the property; for two witnesses,

entirely unimpeached and uncontradicted, testify that in that month he offered to sell the property to one of them, and give him an opportunity to gain something by selling it again.

Nor is the charge of misrepresentation sustained. Neither of the instruments by which the refusal was given, directly or indirectly refers to a sale to or for the United States government, nor to the use to be made of the property.

Mr. Inman testifies that in a conversation which took place, as he says, in February, 1874, (he is probably mistaken as to the month,) the defendant told him he had given a refusal to the complainant, and that he had also talked to the committee, and that he did not "feel like selling" to the complainant, inasmuch as there was another party negotiating for the property. The complainant swears that he did not represent himself to be an officer of the United States government, nor to be acting in any way for it. There appears to be no reason why he should have made any such representation. It does not seem to have been in any wise necessary or essential to his success in obtaining the refusal of the property. The proof of the alleged misrepresentation is not satisfactory. But if it were, it is not material. It does not appear that the defendant would not have sold the property to any one except the United States government, and for the purposes of a cemetery, or that he agreed to give the refusal to the complainant at a lower price than he would otherwise have done, by reason of the fact that he supposed that the property was to be sold to the Federal authorities for the purposes just mentioned. In December, 1874, he offered, as before stated, to sell the property to Mr. Inman on the latter's own account, to give him an opportunity to make money by selling it. To constitute a misrepresentation which will prevent a decree for specific performance, the statement in question must be so material to the contract built on it, that, if the statement be false, the contract becomes one which it would be unconscionable for the party who has made the statement to enforce. In other words, the misrepresentation must be shown to have operated to the prejudice of the defendant. *Fry on Spec.*

*Perf.* 203; *Fellowes* v. *Lord Gwydye,* 1 *Sim.* 63; *S. C.,* 1 *R. & My.* 83. On the hearing, it was alleged, on the part of the defendant, that his wife is unwilling to execute with him a deed for the property to the complainant. The answer, however, does not allege, nor does it appear in the testimony, although she was examined as a witness, that she is unwilling to execute a deed to the complainant, with her husband, if the latter be directed by this court to make conveyance as prayed by the bill. The defendant will be decreed specifically to perform his agreement, and therefore to convey the property to the complainant by deed, (but of bargain and sale merely, without covenants,) duly executed and acknowledged by himself and his wife.